## IN THE UNITED STATES DISTRICT COURT
## FOR THE TENTH CIRCUIT IN KANSAS

| | | |
|---|---|---|
| **L. JAMES** | ) | |
| 706 W. Brown | ) | |
| Liberty, MO 64068 | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **XPO LOGISTICS, INC.** | ) | |
| 234 E. Donovan Rd | ) | |
| Kansas City, KS 66115 | ) | |
| | ) | |
| Serve:  Registered Agent | ) | |
| **Registered Agent Solutions, Inc.** | ) | |
| **2101 SW 21st Street** | ) | |
| **Topeka, KS  66604** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

### I. Preliminary Statement

1.      COMES NOW, Plaintiff, L. James, by and through her attorneys of record, Kevin Baldwin and Eric Vernon of Baldwin & Vernon, and brings this cause of action against Defendant XPO Logistics, Inc., hereinafter referred to as "Defendant" or "Defendant Company." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and costs and attorneys' fees may be awarded pursuant to 42 USC §2000e-5(k) and Federal Rules of Civil Procedure 54, for Defendant's conduct and actions taken against Plaintiff.

### II. Jurisdiction

2.      This action arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC § 2000e et seq. (as amended), and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the

Age Discrimination in Employment Act (ADEA) 29 U.S.C. §621, 29 CFR part 1625 & 1626, et seq.

3.      Jurisdiction is invoked pursuant to 28 USC § 1343 (4), 42 USC § 2000e-5 (f).  A Right-to-sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on April 19, 2019. The Right To Sue Letter, including a copy of Plaintiff's original charge of discrimination filed with the EEOC, is attached hereto as exhibit 1 and is hereby incorporated as if fully set forth herein.

4.      Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC § 2201, § 2202, 42 USC § 1981a.

5.      Costs and attorneys fees may be awarded pursuant to 42 USC § 2000e-5(k) and the Federal Rules of Civil Procedure 54 and are requested by Plaintiff.

6.      Plaintiff is alleging claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), for discrimination based upon race, age, and retaliation.

7.      The Plaintiff, based upon reasonable belief at this time absent discovery, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive and equitable relief, as well as punitive damages.

**III. Venue**

8.      This action properly lies United States Federal Court for the District of Kansas, pursuant to 29 USC §1391(b), because the claim arose in this judicial district, and pursuant to 42 USC § 2000e-5(f)(3) and because unlawful employment practices were committed in this judicial district.

**IV. Parties**

9.      Plaintiff is a resident of the United States, residing at 706 W. Brown, Liberty, Missouri 64068.

10.      Defendant XPO Logistics, Inc., hereinafter referred as "Defendant Company," is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 100 regular employees. Defendant Company is a corporation, (containing within its charter the requisite authority to sue and be sued), and does business in this judicial district, doing business at various locations located within Wyandotte County, at relevant times referred to herein, and specifically at 234 E. Donovan Rd., Kansas City, KS 64115.  Defendant Company is an employer within the meaning of 42 USC § 2000e *et seq*., 42 USC § 1981a *et seq*.

11.      Prior to filing this Petition for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission to no avail and exhausted all required administrative procedures prior to filing this Petition for Damages.

**V. Facts Common to All Counts**

12.      Plaintiff, L. James, is a 44-year-old African American male, who worked for XPO Logistics, Inc. ("Defendant Company") from 2013 to September 4, 2018.

13.      Defendant Company has a pattern and practice of discriminating against African American employees.

14.      African American employees are treated very different than white Caucasian employees.

15.      Defendant Company subjected African American employees, including Plaintiff, to a heightened level of scrutiny as compared to other similar situated white Caucasian employees.

16.     An example of the pattern and practice of Defendant Company, is when Daniel Cramer, the assistant terminal manager, told Plaintiff he could not wear sneakers yet, the white employees were able to wear those same black sneakers.

17.     Plaintiff was working, when Daniel Cramer walked up to him and told him he could not wear sneakers, then told him that either he could change or go home and get a strike and put him as "no work available."

18.     At that point, Plaintiff could not believe it, as Daniel Cramer had just been talking to a white employee who was wearing the same black sneakers, yet was allowed to continue working.

19.     Plaintiff looked around him and many white employees were wearing black sneakers, just like him, yet they weren't disciplines as Plaintiff was.

20.     Plaintiff informed Daniel Cramer that he had no other shoes at home, and Daniel stated, "well I already told Mike you are going home."

21.     After that act of discrimination, Plaintiff complained to Bobby, the Regional Manager, about the treatment he was receiving as compared to others.

22.     After complaining, Jason Young and Bobby, called Plaintiff and told him they would fix it, and he could go back to work, and that they would reverse all PTO he had to use when he was wrongfully sent home– Jason Young was a manager who was trying to change the discriminatory culture at Defendant Company.

23.     On another occasion, Brian Wallace, one of the managers, said, "good morning" to the white employees yet, to the African American employees, he said "get back to work, stop talking about basketball." Stereotyping, since it was not basketball season.

24.     Plaintiff again complained about the treatment and the discrimination, to Mike Louis, manager, and Bobby, regional manager.

25.     On yet, another act of discrimination, Defendant Company took away Plaintiff's position and gave it to a white employee without any reason nor explanation.

26.     Jason Young, terminal manager, and Bobby, regional manager, promoted Plaintiff to a position in which he would train other employees. As part of the promotion and new position, Plaintiff received a raise.

27.     However, two or three weeks later, after having worked in that position, Jeff B., the boss of Jason, took it away from Plaintiff and gave it to a white employee, known as Parker, without any reason nor explanation.

28.     Jason Young did not know the position was taken away from Plaintiff. In fact, Jason Young, was trying to change the culture at Defendant Company, to be less discriminatory.

29.     It is important to note, that all of the individuals in management positions at Defendant Company are all white (Caucasian).

30.     Defendant Company has no African Americans in a management position. In fact, Plaintiff only knew of one African American who was a manager but who had to leave because Defendant Company allowed the white employees to disrespect him and belittle him.

31.     Furthermore, Defendant Company gives overtime to white Caucasian employees but not to African American employees.

32.     Plaintiff complained about the overtime, not getting over time and about the differences being made between white and black employees, to Paul, the day manager. Plaintiff complained several times to no avail.

33.     Since no one was investigating Plaintiff's complaint, Plaintiff complained to Will, the night manager.

34.     Will then gave some hours to Plaintiff, however, Defendant Company did not like the fact that Plaintiff had to go and complain to another manager.

35.     Defendant Company instead of addressing the problems, retaliated against Plaintiff, and started searching for a way to get rid of Plaintiff; and two or three weeks later terminated him.

36.     On a Friday, Plaintiff, who was working as a driver, became stuck on the mud.

37.     The previous four days had been raining yet, Defendant Company still sent Plaintiff to that location.  As Plaintiff was trying to do his job and do deliveries, the trailer got stuck on the mud on Plaintiff's first location.

38.     Plaintiff then called his dispatcher, Mike Morgan, and told him what had happen. Mike then instructed Plaintiff to call the shop. Plaintiff then called the shop and informed then what had happened. The shop, then sent a tow truck. The tow truck pull Plaintiff out and then Plaintiff continued with his work day.

39.     The following Friday, Plaintiff was disciplined for not reporting the "accident" he had, although he did not have an accident, and was told the company had to investigate, meanwhile Plaintiff was not allowed to work.

40.     Based on the years Plaintiff had been with Defendant Company, Plaintiff knew an investigation usually lasted three days. However, that was not the case with his "investigation."

41.     After one week, Plaintiff called and called to get an update on the investigation, however, no one knew anything about any investigation, and it seemed as no one was doing an investigation.

42.     Plaintiff kept calling for updates on the investigation, until three weeks later, he was told he was terminated.

43.     Defendant Company alleged they sent a letter to his house saying he was terminated, yet they sent it to the wrong address alleging that was the address they had for him, which seemed odd to Plaintiff as he had in the past receive everything else to his house, the correct address.

44.     Two or three weeks after Plaintiff complained of discrimination, Todd Engle, HR, on behalf of Defendant Company fired Plaintiff alleging Plaintiff had not reported the "accident" he had. However, Plaintiff did not have an accident, he simply was stuck on the mud.

45.     Plaintiff was in disbelief, and knew he was being retaliated against for complaining of discrimination, as other white employees had made actual mistakes and had not been terminated.

46.     For instance, Dawn, a white female, had dropped 3 trailers and was not terminated. Yet, when Cornell, an African American employee dropped 1 trailer he was terminated.

47.     It is a pattern and practice that when a white employee made a mistake or has a major driving violation nothing happened, but when an African American employee made a mistake or has minor driving violation he/she was terminated.

48.     Furthermore, Plaintiff had just received recognition for being a good employee, which was posted on a big tv screen for everyone to see.

49.     Prior to Plaintiff being terminated, Jason Young, a manager who was trying to change the discriminatory culture of Defendant Company, was terminated right after he had received a Crystal Award from the Company.

50.     Katina McGee, another African American employee, also made a complaint of discrimination and was soon after terminated. Katina had to move all the way to Baltimore to find a job.

51.     After Plaintiff was terminated, Plaintiff tried applying for jobs for which he had to put where he had worked before. One of those jobs was at DART, when DART called Defendant Company to check on Plaintiff's work history, Defendant Company, by Mike Morgan, refused to provide any information and said Plaintiff had never worked there. Because of that, Plaintiff was unable to get a job at DART.

52.     Even after being terminated, Defendant Company continues to retaliate against Plaintiff.

53.     Furthermore, ever since Plaintiff was terminated by Defendant Company, it has been a struggle for Plaintiff to get a job because of the "termination."

54.     Plaintiff has a clean record and no accidents, yet, he can't find a job because of what Defendant Company did to him.

55.     Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendants' conduct.

56.     Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendants' conduct.

57.     Defendant and its managers and other employees actively engaged in discrimination against Plaintiff with malice or in reckless indifference to his right to be free from such discrimination.

**VI. Causes of Action**

<u>COUNT I</u>

<u>AGE  DISCRIMINATION</u>
<u>AGAINST ALL DEFENDANTS JOINTLY AND SEVERALLY</u>

58.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

59.     Plaintiff is an individual subject to the protection of the ADEA based upon the fact that he was over 40 years old at the time of the events alleged herein.

60.     Defendants' actions, as noted above, constituted discrimination against the Plaintiff in violation of the ADEA.

61.     Defendants' terminated Plaintiff's employment and Plaintiff's age was a motivating factor in the decision to terminate his employment.

62.     Defendant treated Plaintiff disparately as compared to other significantly younger employees, terminated Plaintiff's employment, and Plaintiff's age was a motivating factor in the decision to treat him differently and to terminate his employment.

63.     At the time these actions were taken by Defendants', Defendants' knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

64.     Defendants' actions were unlawful employment practices in violation of the ADEA.

65.     Plaintiff has been damaged by Defendants' unlawful employment actions and seeks compensatory, punitive, and equitable relief including attorneys' fees.

## COUNT II

### RACIAL DISCRIMINATION
### AGAINST DEFENDANT XPO LOGISTICS INC.

66.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

67.     Plaintiff is of African American descent, and is therefore considered a member of the protected category under Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC §2000e *et seq.* (as amended), the Civil Rights Act of 1991, 42 USC § 1981a.

68.     Defendants' actions, as noted above, constituted a pattern and practice of racial discrimination against Plaintiff.

69.     Defendants' actions, as noted above, were discriminatory, continuous, arbitrary, and capricious and constituted a disparity in treatment toward Plaintiff as compared to similarly situated individuals who were not African American and, as such, Defendant's actions were unlawful employment practices.

70.     Defendants' considered Plaintiff's race as a motivating factor in the decision to treat him disparately, by subjecting him to discriminatory references and/or comments, refusing to promote him, being subjected to unwarranted discipline, and ultimately terminating him. Furthermore, Defendant's Company failed to provide a work place free of racially charged comments directed towards Plaintiff.

71.     At the time these actions were taken by Defendants, Defendants actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff and others to be free from such discrimination.

72.     Defendants' actions were unlawful employment practices in violation of Title VII.

73.     Plaintiff has been damaged by Defendants' unlawful employment actions and seeks compensatory, punitive, and equitable relief including attorneys' fees.

### COUNT III

### RETALIATION
### AGAINST DEFENDANT XPO LOGISTICS INC.

74.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

75.     Plaintiff hereby alleges claims of retaliation against Defendant Company.

76.     Defendants' actions, as noted above, constituted retaliation against Plaintiff in violation of the Title VII.

77.     Plaintiff's actions of complaining of what he believed to be acts in violation of the Title VII as set forth herein was a motivating factor in the Defendants' decision to retaliate against him by treating him differently, subjecting him to a hostile work environment, subjecting him to a heightened level of scrutiny, and/or terminating him from his employment with Defendant Company.

78.     Plaintiff engaged in the protected activity of complaining of discrimination and a hostile work environment based upon race and was therefore engaged in a protected activity under Title VII.

79.     At the time these actions were taken, Defendants knew that their actions were unlawful and Defendants' actions were undertaken maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

80.     Defendants' actions were retaliatory, continuous, arbitrary and capricious, and constituted a disparity in treatment toward Plaintiff and as such, were unlawful employment practices in violation of Title VII.

81.     Defendants' actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of retaliation against the Plaintiff that culminated in his termination.

82.     The actions of Defendant Company toward Plaintiff and other persons evidence a pattern and practice of retaliation in violation of the provisions of Title VII.

83.     Plaintiff has been damaged by Defendant Company's unlawful employment and seeks compensatory, punitive, and equitable relief including attorneys' fees.

**COUNT IV**

**RACIALLY HOSTILE WORK ENVIRONMENT
AGAINST DEFENDANT XPO LOGISTICS INC.**

84.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs and attached exhibits as if fully set forth herein.

85.     Plaintiff is of African American descent, and is therefore considered a member of the protected category under Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC §2000e *et seq.* (as amended), the Civil Rights Act of 1991, 42 USC § 1981a.

86.     Plaintiff's race (African American) was a motivating factor in Defendants' decision to allow the race discrimination and the existence of the aforementioned racially hostile work environment directed at the Plaintiff.

87.     Defendants' actions, as noted above, constituted race discrimination via the creation and allowed existence of a racially hostile work environment to which Plaintiff was subjected to as Defendant Organization and its supervisors were aware of the illegal acts of its employees and managers, and did not take action to stop or prevent the acts.

88.     At the time these actions were taken by Defendants, Defendants knew that these actions were unlawful and Defendants' action were undertaken maliciously and/or in reckless

disregard for Plaintiff's right to be free from discrimination.

89.     Plaintiff was qualified for the position he held with Defendant Company and was performing satisfactorily.

90.     Plaintiff was discharged from employment with Defendant Company.

91.     Plaintiff was subjected to a hostile work environment based upon his race (African American).

92.     Defendant Company was made aware of the racially hostile work environment but failed to take action.

93.     The actions in allowing the hostile work environment to continue unchecked, as noted above, were discriminatory, continuous, arbitrary and capricious and constituted a disparity in treatment toward Plaintiff and, as such, were unlawful employment practices in violation of Title VII.

94.     The actions of Defendant Company toward Plaintiff and other minority employees demonstrate a pattern and practice of discrimination in violation of the provisions of Title VII.

95.     Plaintiff has been damaged by Defendants' unlawful employment actions.

**VII. Prayer for Relief**

96.     Wherefore, Plaintiff prays that this Court:

    a. declare the conduct engaged in by Defendants' to be in violation of Plaintiff's rights;

    b. enjoin Defendant XPO Logistics, Inc., and its managers/supervisors from engaging in such conduct;

    c. restore Plaintiff to him rightful position with XPO Logistics, Inc. or, in lieu of reinstatement, order front salary and benefits for the period remaining until

normal retirement;

d.   award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period or front salary and benefits accrual;

e.   award Plaintiff compensatory, punitive and liquidated damages against all Defendants;

f.   award Plaintiff damages for emotional pain and suffering;

g.   award Plaintiff her costs and attorneys' fees; and

h.   grant such other relief as it may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

Respectfully submitted,

By: /s/ *Kevin Baldwin*
Kevin Baldwin, KS Bar No. #18637
Eric Vernon, KS Bar No. #21358
**BALDWIN & VERNON**
14 South Main Street
Liberty, MO 64068
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
ATTORNEY FOR PLAINTIFF