## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LOUIS JAMES,                                    )
                                                )
                          Plaintiff,            )
                                                )
        v.                                      )        Case No. 19-2390-HLT-ADM
                                                )
XPO LOGISTICS FREIGHT, INC.,                    )
                                                )
                          Defendant.            )

### MEMORANDUM AND ORDER

This matter comes before the court on defendant XPO Logistics Freight, Inc.'s ("XPO Freight") Motion to Set Aside Clerk's Entry of Default.[1]  (ECF No. 24.)  The court will grant XPO Freight's motion because of the strong policy in favor of deciding cases on their merits.  Here, XPO Freight has demonstrated that its default was not the result of willful conduct, plaintiff Louis James ("James") would not be prejudiced if the court were to set aside the default, and XPO Freight has a meritorious defense to James' claims.  Therefore, good cause exists to set aside the clerk's entry of default.  And because the court sets aside the clerk's entry of default, the court denies plaintiff James' Motion for Entry of Default Judgment (ECF No. 26) as moot.

## I.      BACKGROUND

On July 16, 2019, James filed an employment complaint naming XPO Logistics, Inc. as the defendant and alleging that he was subject to age and race discrimination, retaliation, and a racially hostile work environment in violation of federal law.  A summons was issued, but James

---

[1] The district judge referred this motion to the undersigned.  A motion to set aside a clerk's entry of default is not considered a dispositive motion.  *Goodwin v. Hatch*, No. 16-CV-00751-CMA-KLM, 2018 WL 3454972, at *4 (D. Colo. July 18, 2018), *aff'd*, 781 F. App'x 754 (10th Cir. 2019).  The undersigned therefore issues this ruling as a memorandum and order rather than a report and recommendation.

did not serve a copy of the complaint and summons.  Two months later, on September 16, James

filed a first amended complaint correcting the defendant employer's name to XPO Freight.  (ECF

No. 5.)  On September 25, a summons was issued to XPO Logistics, Inc., rather than the newly-

named defendant.  The summons was subsequently returned unexecuted in October 2019 because

of the incorrect name.  (ECF No. 6.)

### A.   The Court's Orders to Show Cause

On December 19, the court ordered James to show cause as to why the undersigned should

not recommend that his claims be dismissed for failure to serve the summons and complaint on

XPO Freight within 90 days, as required by FED. R. CIV. P. 4(m).  (ECF No. 7.)  James timely

responded to the court's order and requested a new summons be issued to XPO Freight.  (*See* ECF

No. 8, ¶ 2.)  The court ordered James to complete service by February 3, 2020.  (ECF No. 9.)

On January 23, the summons issued to XPO Freight was returned executed with a proof of

service that XPO Freight was served on January 16.  (ECF No. 10.)  XPO Freight did not timely

file an answer or otherwise appear.  When James took no further action, the court issued a second

order to show cause on February 21—this time, as to why the undersigned should not recommend

that the district judge dismiss the lawsuit for failure to prosecute pursuant to FED. R. CIV. P. 41(b).

(ECF No. 12.)  On February 27, James filed a motion for default judgment against XPO Freight.

(ECF No. 13.)  James also timely responded to the second order to show cause, asking the court

not to recommend dismissal.  (ECF No. 14.)  On March 31, the district judge denied James' motion

for default judgment without prejudice, noting he did not follow the two-step procedure for default

judgment mandated by FED. R. CIV. P. 55.  (ECF No. 16.)

Although the district judge's order set forth the proper procedure for seeking default

judgment, James took no further action.  On June 22, the court issued yet a third order to show

cause, again requiring James to show cause as to why the undersigned should not recommend that the district judge dismiss this action for failure to prosecute pursuant to FED. R. CIV. P. 41(b). James responded on July 8, stating that he was in the process of obtaining a clerk's entry of default against XPO Freight and "intend[ed] to follow through the two-step procedure under Rule 55 to obtain a default judgment." (ECF No. 19 ¶¶ 9-10, at 2.) After reviewing the response, the court found that James had shown good cause why the undersigned should not recommend dismissal. The court also set forth its expectation that "plaintiff [would] be diligent in seeking default judgment against defendant going forward." (ECF No. 20.)

**B.    XPO Freight's Motion to Set Aside Clerk's Entry of Default**

On July 13, the clerk entered default as to XPO Freight. (ECF No. 21.) XPO Freight received notice of the clerk's entry of default on July 15 and reportedly retained outside counsel to represent the company in this lawsuit on the same day. (ECF No. 25 ¶¶ 21-22, at 4.) On July 17, XPO Freight's counsel entered an appearance and contacted the undersigned's chambers to notify the court that XPO Freight intended to file a motion to set aside the clerk's entry of default. XPO Freight promptly filed the instant motion on July 22, arguing good cause exists to set aside the clerk's entry of default. James opposes the motion. (ECF No. 29.)

## II.    DISCUSSION

FED. R. CIV. P. 55(c) permits a court to "set aside an entry of default for good cause." "In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (quoting *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)); *see also Sch.-Link Techs., Inc. v. Applied Res., Inc.*, 471 F. Supp. 2d 1101, 1119 (D. Kan. 2007)

(applying these three "principal factors" to determine whether default should be set aside). The good cause required to set aside an entry of default "poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). Indeed, the good cause standard is fairly liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (characterizing the Rule 55(c) standard as "fairly liberal" and citing *Gomes*). Courts must balance the defendant's interest in adjudicating the case on the merits "against the interest of the public and the court in the orderly and timely administration of justice." *Kiewel v. Balabanov*, No. 10-2113-JTM, 2011 WL 1770084, at *2 (D. Kan. May 9, 2011). Whether to grant a motion to set aside a clerk's entry of default is within the court's sound discretion. *See Pinson*, 316 F. App'x at 750. "In close cases, doubts should be resolved in favor of deciding the case on the merits." *Perez v. Dhanani*, No. 13-1020-RDR-KGS, 2015 WL 437769, at *1 (D. Kan. Feb. 3, 2015).

Here, XPO Freight argues that the court should set aside the clerk's entry of default because its failure to timely answer was not willful, plaintiff will not be prejudiced, and XPO Freight has a meritorious defense to James' claims. The court addresses these arguments, in turn.

### A.    Willful Conduct

In evaluating the first factor, the court looks to whether the defendant's conduct was willful or without excuse. *United States v. Timbers Pres., Routt Cty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996). "A defendant's knowledge of a lawsuit and his postservice actions 'play a role in measuring the willfulness of a defendant's default.'" *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-

JAR, 2010 WL 2952393, at *2 (D. Kan. July 26, 2010) (quoting *Jenkens & Gilchrist v. Groia &*
*Co.*, 542 F.3d 114, 123 (5th Cir. 2008)).  When a defendant has actual or constructive notice of a
lawsuit, "failure to answer or otherwise contact the Court . . . demonstrates complete disregard for
the authority of the Court." *Crutcher*, 205 F.R.D. at 584.  A court should also consider whether a
defendant is attempting to stall litigation. *Perez*, 2015 WL 437769, at *2.

XPO Freight contends that its default was not willful.  XPO Freight explains that it has two
Connecticut-based in-house attorneys who are responsible for labor and employment matters
across the company's approximately 90,000-strong global workforce.  (ECF No. 25-1 ¶ 3, at 1.)
XPO Freight admits that it was served on January 16, 2020.  (*Id.* ¶ 4, at 1.)  But the documents
were inadvertently set aside instead of following the company's normal practice of retaining
outside counsel to defend a lawsuit.  (*Id.*)  XPO Freight contends that the delay was further
exacerbated when the company's in-house attorneys worked from home, with no access to the
office, starting in March 2020 because of the COVID-19 pandemic.  (*Id.* ¶ 5, at 2.)  Further
contributing to the delay, XPO Freight's in-house attorneys were handling not only their regular
caseload, but also a multitude of employment-related issues related to the pandemic.  (*Id.* ¶ 6, at
2.)

This case finally registered again on XPO Freight's radar when it received notice of the
clerk's entry of default on July 15, 2020.  (*Id.* ¶ 8, at 2.)  XPO Freight retained outside counsel that
same day.  (*Id.* ¶ 9, at 2.)  On July 17, XPO Freight's counsel entered an appearance and reached
out to the undersigned's chambers to notify the court that the company intended to file a motion
to set aside the clerk's entry of default.  XPO Freight then promptly filed the instant motion a few
days later, on July 22.

James argues that XPO Freight's conduct was culpable because XPO Freight was first put on notice that this lawsuit would be forthcoming when the Equal Employment Opportunity Commission and the Kansas Human Rights Commission issued James Right to Sue notices.  (ECF No. 29, at 3.)  James also argues that XPO Freight had constructive notice of the lawsuit when service of the incorrect summons and a copy of the amended complaint was attempted in October 2019 because, as he represents, the service address for XPO Freight and XPO Logistics, Inc. is the same.  (*Id.* at 4, 7.)  And James points out that XPO Freight admits that it had actual notice of the lawsuit when it was served on January 16.  (*Id.* at 7.)  James argues that misplacing the summons and complaint does not justify the company's default.  (*Id.* at 2.)  James also argues that the COVID-19 pandemic is a "convenient excuse" and has nothing to do with the default because XPO Freight was served about 60 days before the country began to shut down.  (*Id.* at 7-8.)

The court finds that XPO Freight's default was inadvertent and not the result of willful conduct.  An administrative agency issuing a Right to Sue notice to an employee is not notice of a lawsuit.  An employee who receives a Right to Sue notice may choose to never initiate a lawsuit. And even assuming for the purposes of this motion that XPO Freight had knowledge of this lawsuit in October 2019, the company had no obligation to participate at that time because it had not been properly served.  XPO Freight also had no way to predict when James would attempt to serve a corrected summons.  James requested a corrected summons only after the court prompted him to complete service with an order to show cause approximately two months later, in December of 2019.  (ECF Nos. 7 & 8.)

XPO Freight was properly served with process by January 16, 2020, and was thereafter obligated to participate in this case.  But, XPO Freight mistakenly set aside James' amended complaint and the summons, and those documents were then inaccessible to XPO Freight's in-

house counsel when they were required to work from home beginning in March 2020. This does not constitute willful conduct. There is no evidence that XPO Freight willfully failed to answer as a strategic decision or out of disregard for the court's authority. To the contrary, when XPO Freight received notice of the clerk's entry of default, the company immediately hired outside counsel and took steps to correct the default. This does not demonstrate purposeful disregard for the court's authority. XPO Freight's conduct was not willful. *See, e.g.*, *Azar & Assocs., P.C. v. Bryant*, No. 417CV00418ALMKPJ, 2017 WL 4767785, at *2 (E.D. Tex. Sept. 22, 2017) (finding no willfulness where the defendants contended that they "misplaced the documents and were preoccupied with other legal proceedings"), *report and recommendation adopted*, No. 4:17CV418, 2017 WL 4760287 (E.D. Tex. Oct. 20, 2017); *Ariz. Pac. Wood Preserving, Inc. v. Miss. Mat & Tie, LLC*, No. 2:13-CV-139-HSO-RHW, 2013 WL 5505075, at *1-*2 (S.D. Miss. Oct. 2, 2013) (finding no willfulness where process was set aside and misplaced, and where the defendant acted expeditiously to correct the default upon receiving notice of a default judgment motion hearing); *Mendoza v. S. Heritage Const. Corp.*, No. 6:08CV1ORL28GJK, 2008 WL 2944913, at *1 (M.D. Fla. July 29, 2008) (recommending that default be set aside where defendants misplaced the complaint and did not receive any further notice relating to the case until receiving a motion for default judgment).

### B.      Prejudice to Plaintiff

The court next considers whether the plaintiff will be prejudiced if the court vacates the clerk's entry of default. In evaluating this factor, the court looks to whether plaintiff's ability to litigate has "in some way [been] impaired or thwarted" through the acts of the defaulting party or other events during the default period. *Super Film of Am., Inc. v. UCB Films, Inc.*, No. 02-4146-SAC, 2004 WL 2413497, at *2 (D. Kan. Sept. 23, 2004) (citing *Int'l Bhd. of Elec. Workers, Local*

*Union No. 313 v. Skaggs*, 130 F.R.D. 526, 529 (D. Del. 1990)).  Often, litigation is only slightly delayed by a defendant's default, which does not constitute prejudice.  *See, e.g.*, *Meissner v. BF Labs Inc.*, No. 13-2617-RDR, 2014 WL 590377, at *2 (D. Kan. Feb. 14, 2014) (finding no prejudice where the defendant filed a motion to set aside the entry of default approximately one month after the plaintiff filed his complaint).  Longer delays may be prejudicial, but, "generally, delay alone is not sufficient to show prejudice."  *Perez*, 2015 WL 437769, at *4.  A plaintiff "must show that any delay has actually hindered its ability to litigate the case."  *Id.*

James argues that he will be prejudiced if the court sets aside the clerk's entry of default because XPO Freight "has caused this lawsuit to be delayed for approximately . . . six months." (ECF No. 29, at 8.)  In response, XPO Freight correctly points out that James is responsible for much of the delay in the case.  James did not first serve a summons and the amended complaint on XPO Freight until more than six months after filing this lawsuit.  (ECF No. 10.)  And that occurred only after the court entered an order to show cause that prompted him to complete service. (ECF No. 7.)  Thereafter, when James showed no signs of taking any steps to pursue default judgment, the court was forced to enter two additional orders to show cause in February and June of 2020 for James' failure to prosecute this action.  (*See* ECF Nos. 12 & 17.)  In contrast, XPO Freight took steps to remedy its default within one week of receiving notice of the clerk's entry of default.  The court cannot find that James would be prejudiced by delay that is primarily attributable to his own conduct.

### C.      XPO Freight's Meritorious Defense

The third factor requires the court to evaluate a defendant's defenses.[2]  "The burden to show a meritorious defense is light."  *Super Film*, 2004 WL 2413497, at *2.  A defendant "does not need to demonstrate a likelihood of success on the merits. Rather, defendant's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense."  *Crutcher*, 205 F.R.D. at 585.  For purposes of analyzing this factor, "the movant's version of the facts and circumstances supporting his defense will be deemed to be true."  *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).

XPO Freight contends that James' employment was terminated because he failed to report an accident in accordance with company policy and not because of his age, race, or any complaints that he may have made about harassment or discrimination.  (ECF No. 25, at 7-10.)  XPO Freight also denies the specific instances of alleged race-based disparate treatment and harassment in James' amended complaint and contends that, even if James' allegations regarding purported harassment are taken as true, they are isolated incidents that do not amount to a hostile work environment.  (*Id.* at 9, 11.)  Accepting XPO Freight's version of the facts as true for the purposes of this motion, XPO Freight has met its light burden to demonstrate a meritorious defense.

## III.    CONCLUSION

Each of the factors weigh in favor of setting aside the clerk's entry of default.  Because XPO Freight has established good cause under Rule 55(c), its motion is granted.

**IT IS THEREFORE ORDERED** that defendant XPO Logistics Freight, Inc.'s Motion to Set Aside Clerk's Entry of Default (ECF No. 24) is granted.

---

[2] James' response argues that XPO Freight does not have a meritorious defense for failing to respond to his amended complaint.  (ECF No. 29, at 9.)  But he does not address whether XPO Freight has meritorious defenses to his claims.

**IT IS FURTHER ORDERED** that plaintiff Louis James' Motion for Entry of Default Judgment (ECF No. 26) is denied as moot.

**IT IS SO ORDERED.**

Dated August 7, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge